IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUNE SPELLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 CV 1983 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| AMERICAN ASSOCIATION OF | ) |
| NEUROLOGICAL SURGEONS, | ) Magistrate Judge Jeffrey I. Cummings |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff June Speller's motion to compel defendant American Association of Neurological Surgeons ("AANS") to fully respond to certain discovery requests (Dckt. #35). For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

**I.    Background**

Plaintiff Speller is an African American woman who suffers from end stage renal disease that requires daily dialysis. Defendant AANS is a scientific and educational association focused on advancing the specialty of neurological surgery. Speller began working for AANS in January 2017 as the Director of NeuroPoint Alliance, an AANS affiliate. In this role, Speller reported to defendant's CEO, Kathleen Craig. According to Speller, over the next few years she discharged her duties competently and enjoyed an excellent reputation. However, Speller alleges that she was abruptly and improperly fired on April 30, 2019 for "performance issues" a week after her hospitalization for a kidney infection caused by dialysis.[1] Speller also alleges that other

---

[1] Speller's "performance issues" apparently included "issues with management style, managing direct reports, lack of responsiveness and/or difficulty in effectively moving projects forward." (Dckt. #35-1 at 3.)

1

individuals at AANS regularly engaged in racially offensive conduct, which she complained about to Craig. Speller brings claims for violations of and retaliation under the Americans with Disabilities Act, the FMLA, §1983, §1981, and the Illinois Human Rights Act.

In the instant motion, Speller seeks an order compelling AANS to fully respond to certain discovery requests. Having reviewed the briefs and heard additional argument at a hearing on May 17, 2021, the Court orders as follows.[2]

### A. The scope of plaintiff's requests (from 2015 through the present) is reasonable

At the outset, the Court addresses the parties' dispute regarding the general temporal scope of Speller's requests. Speller seeks information and documents from 2015 through the present. AANS objects to providing any information prior to 2017, the year Speller was hired. AANS further argues that CEO Craig – Speller's supervisor and the ultimate decision maker here – did not become CEO until 2016. While the Court acknowledges this fact, the Court will permit Speller's scope of 2015 through the present to stand.

"In determining the appropriate time frame for discovery in employment discrimination suits, courts generally tailor discovery requests to encompass a 'reasonable time period' both before and after the discriminatory event being alleged." *Vajner v. City of Lake Station, Indiana*, No. 2:09-CV-245, 2010 WL 4193030, at *4 (N.D.Ind. Oct. 18, 2010) (citation omitted); *see also Miles v. Boeing Co.*, 154 F.R.D. 117, 119 (E.D. Pa. 1994) ("[T]he scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination."). Generally, courts in the Seventh Circuit have "limited discovery in employment discrimination cases to a period of three to five

---

[2] As clarified in the parties' briefs and discussed further at the hearing, the parties have resolved their disputes related to the production of financial documents, a privilege log, CEO Craig's calendar, and other informal/internal complaints of discrimination. Accordingly, the Court need not address those disputes here.

2

years, with some courts extending the bounds a bit further." *Vajner*, 2010 WL 4193030, at *5 (collecting cases).

Here, where Speller was hired in 2017, allegedly endured discriminatory conduct during her tenure at AANS, and was terminated by CEO Craig in 2019, her request for information and documents dating back to 2015 through the present is not unreasonable.[3] *See Sanchez v. City of Fort Wayne*, No. 118CV00397HABSLC, 2019 WL 6696295, at *3 (N.D. Ind. Dec. 9, 2019) (permitting requests for a five-year period spanning approximately three years prior and two years after the discriminatory termination); *Leibforth v. Belvidere Nat'l Bank*, No. 99 C 50381, 2001 WL 649596, *2 (N.D. Ill. 2001) (interrogatory responses limited to "five years preceding the alleged discriminatory acts" were not overly burdensome). Indeed, AANS has even acknowledged that at least with respect to certain requests, the responses would not change if directed to use the 2015 scope. Accordingly, the Court will allow Speller's requested temporal scope to stand. AANS shall fully review its prior responses to ensure that it has provided all responsive information from 2015 through the present and shall provide all information and documents ordered below dating back to 2015.

**B.   Defendant shall fully respond to interrogatory nos. 1, 2 and 4 by producing a list of all employees who reported to CEO Craig from 2015 to the present and the requested information regarding each employee**

In interrogatory nos. 1, 2 and 4, Speller asked AANS to identify every individual who reported to CEO Craig from 2015, including those employees who had similar "performance issues" as Speller did and/or were removed from a project. For each individual identified,

---

[3] Although defendant argues that Craig was not hired as CEO until 2016, the parties explained at the hearing that prior to 2016, Craig at least served in a Director of Marketing position. In this regard, the Court distinguishes this case from *Vajner*, 2010 WL 4193030, at*5, where the decision maker was hired just one day prior to the plaintiff's termination and the court limited the responses to the year of hire of the decision maker.

3

Speller sought specific information, including: (1) name; (2) race; (3) disability status; (4) whether the individual requested an accommodation or leave; (5) specific performance problems, if any, and whether the individual was placed on a performance improvement plan; and (6) reasons and date of separation, if applicable.

To date, AANS has responded by identifying only the four individuals who were involuntarily terminated by Craig between 2017 and the present, and providing performance evaluations along with some, but not all, of the requested information.[4] As Speller explains in her reply, however, she continues to seek the list and corresponding information of the direct reports to Craig from 2015 through the present, not just those who were terminated, in order to identify potential witnesses and comparators.[5]

The Court finds Speller's continued request for the full list to be reasonable. Indeed, plaintiffs in employment discrimination cases "are entitled to explore information during discovery to prove who [their] legitimate comparators are or to discover additional potential comparators." *Barney v. Zimmer Biomet Holdings, Inc.,* No. 3:17-CV-616-JD-MGG, 2020 WL 4368359, at *3 (N.D.Ind. July 30, 2020). The list of direct reports to Craig and the information sought will allow Speller to do just that. Furthermore, AANS has not argued that providing the information will be otherwise burdensome and any privacy concerns set forth by AANS can be alleviated by the confidentiality order (Dckt. #32) already in place. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 0864, 2018 WL 6413199, at *3 (N.D. Ill. Dec. 6, 2018), *objections overruled*, No. 18 CV 864, 2019 WL 11583408 (N.D. Ill. Apr. 25, 2019) (allowing relevant

---

[4] Defendant has since confirmed that there were no additional involuntary terminations dating back to 2015. (Dckt. #42 at 2.)

[5] In her reply, Speller also complained that she was unable to cross-reference certain employee IDs with employee names. Plaintiff's counsel confirmed at the hearing that this issue has been resolved.

discovery where the confidentiality order was adequate to protect privacy interests).

Accordingly, AANS shall fully respond to interrogatory nos. 1, 2 and 4.

> C. **Plaintiff's request for personnel files is granted as to the decision maker, granted in part with respect to certain comparators, but otherwise denied as overly broad**

In RFP Nos. 27 and 33, Speller seeks the full personnel files (excluding particularly sensitive information such as financial and insurance information, Social Security info, computer passwords, etc.) of a number of AANS' current and former employees. AANS objects to the production of full personnel files, arguing that Speller is engaging in an improper fishing expedition. On the record before the Court, Speller's request for personnel files is granted in part and denied in part as follows.

**(1) CEO Craig**

Speller's request for the personnel file of CEO Craig, the undisputed decision maker in her termination, is granted. As Speller argues, courts have regularly permitted plaintiffs in employment discrimination cases to discover the personnel files of decision makers.[6] *Digan v. Euro-Am. Brands, LLC,* No. 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) ("[Plaintiff] is entitled to discover the personnel files of the decisionmakers involved in her termination"); *Byers v. Illinois State Police,* 2002 WL 1264004, at *13 (N.D.Ill. June 3, 2002) ("The personnel files of the individuals alleged to have discriminated against the plaintiffs are clearly relevant."). AANS shall produce CEO Craig's full personnel file, excluding the highly sensitive information conceded by Speller as irrelevant. (*See* Dckt. #35 at 10.)

---

[6] AANS contends that it need not respond further because Craig's performance evaluations are performed orally. But this argument is misplaced where Craig's personnel file may include other relevant information outside of performance evaluations.

**(2) HR Representative J. Garrett Lyman**

Speller's request for the personnel file of HR representative J. Garret Lyman is denied. Although Speller categorizes Lyman as an individual involved in disciplining and firing her, she provides no additional factual detail and there is no indication that Lyman had any decision-making power here. In fact, as defense counsel explained at the recent hearing, AANS apparently uses a third-party (as opposed to in-house) human resources department, thereby further calling into question Lyman's involvement in Speller's termination proceedings beyond typical HR-related administrative duties. To be clear, the fact that Lyman – or any other individual for that matter – is a potential witness "is not a sufficient basis for permitting [plaintiff] to rummage through confidential and sensitive records based on nothing but the hope that something relevant will be found." *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D.Wis. Sept. 4, 2020).

**(3) Alice Kelsey and Cathy Powers**

Speller's request for the personnel files of Alice Kelsey and Cathy Powers is granted in part. As explained at the hearing, Kelsey allegedly presented an offensive slideshow at AANS and Powers had performance issues but was placed on a performance improvement plan before ultimately being terminated. AANS has already produced, or agreed to produce, the performance evaluations of Kelsey and Powers but continues to object to the production of the remainder of the personnel files.

At a minimum, Speller has explained why Kelsey and Powers might be potential comparators who engaged in improper behavior and yet were treated more favorably by AANS. Discovery into the relevant employment-related documents of such potentially similarly situated comparators is permissible as it is relevant to Speller's claims. *Lane v. Riverview Hosp.,* 835

F.3d 691, 696 (7th Cir. 2016) ("[E]vidence that the employer treated better a similarly situated employee outside the plaintiff's protected class can provide some circumstantial evidence of discrimination.").[7] Accordingly, with respect to Kelsey, Powers, and any of the other individuals AANS previously identified as being involuntarily terminated by Craig, AANS shall produce all documents related to performance evaluations, adverse disciplinary actions, performance improvement plans, and, where applicable, any documents relevant to AANS' decision to terminate employment.[8]

### (4) Peter Kuhn and Bruno Biezynski

Speller's request for the personnel files of Kuhn and Biezynski is denied on the record before the Court. At the hearing, plaintiff's counsel explained that Kuhn is the former CFO who Speller "believes" had performance issues. As for Biezynski, Speller believes he may have been terminated after requesting FMLA leave to care for his wife. Like AANS, the Court finds these speculative assumptions insufficient to support the production of Kuhn and Biezynski's personnel files.

### (5) Irene Zyung and Michele Anderson

Speller's request for the personnel files of Irene Zyung and Michele Anderson is denied. There is no dispute that Zyung and Anderson were direct reports to Speller and thus, as AANS argues, are less likely to be similarly situated comparators to Speller. *See Milloy v. WBBM-TV, Chicago*, 613 F. Supp. 2d 1035, 1037 (N.D.Ill. 2009) (noting that "differences in status have consistently been held to negate the 'similarly situated' test"). Further, plaintiff's counsel

---

[7] To be clear, at least with respect to Kelsey and Powers, AANS has not presented any convincing argument that they were not similarly situated to Speller.

[8] The Court acknowledges Speller's citation to cases seemingly permitting the production of *full* personnel files of potential comparators, among others. *See* Dckt. #35 at 9-12. However, the Court believes that the documentation that it has ordered AANS to produce will capture the relevant and responsive personnel documents necessary for Speller to further support her claims here.

explained only vaguely at the hearing that Zyung and Anderson made allegations about Speller's management style that she believes were motivated by her race. Again, such speculative assertions do not support her request for the personnel files.

**(5) Craig's "direct reports" for purposes of identifying comparators**

Speller's request for the personnel files of all direct reports to Craig is denied as overly broad. After defendant provides the list of direct reports and information described above, *supra* at §I.C., the parties shall meet and confer to determine whether any further personnel documents, such as relevant performance-related documents, should be produced.[9]

**(6) Any employee who made complaints of discrimination, retaliation, or FMLA violations from 2015 to the present**

Speller's request for the personnel files of any employee who made similar complaints of discrimination against AANS is denied as moot. Defendant has confirmed through its brief and on the record at the hearing that, apart from Speller, no employees have made such complaints, whether formally or informally, since 2015 through the present.

E. **Defendant shall produce documents related to plaintiff's work on the "Joint Registry" project**

In RFP no. 17, Speller seeks documents that refer or relate to any work she performed on a certain "Joint Registry" project from March 6, 2019 through her termination.[10] AANS apparently asserted to the EEOC that Speller was removed from this project due to performance

---

[9] RFP No. 33 also seeks the personnel file of Ashley Logan. However, neither party addressed this individual in the briefs or at the hearing. Unless Logan is one of the individuals previously identified by AANS as being involuntarily terminated by Craig, Speller's request for Logan's personnel file is denied.

[10] AANS describes the "Joint Registry" as a partnership between itself and the Society for Neurointerventional Surgery ("SNIS") to create and operate one of the most robust neurovascular surgical registries of its kind in the country. (Dckt. #39 at 14.)

issues. Thus, Speller seeks the documents to show that despite AANS' contention of performance problems, she continued to work on the project.

For its part, AANS does not object to the relevancy of this information. Instead, defendant argues that this request requires the production of confidential research, development, and commercial information. (*See* Dckt. #39 at 14 ("Work product related to the development of this registry is highly confidential and the disclosure of which could impact both AANS and SNIS.")). In light of these concerns, defendant contends that the less burdensome option would be for plaintiff to depose Craig about plaintiff's work on the project. Respectfully, the Court disagrees.

Like Speller, and as explained above, *supra* at §I.B., AANS' confidentiality concerns can be alleviated by the confidentiality order (Dckt. #32) already in place. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6413199, at *3. Notably, AANS has not argued that the confidentiality order should be modified to include a "highly confidential – attorney's eyes only" designation, nor would it seem necessary. Though Speller has apparently secured new employment, there is no indication that she works with an organization that has any competing interest with AANS. More importantly, the Court is confident that the attorneys and parties will fully abide by the requirements of the protective order. Where, as here, defendant has not otherwise argued that responding to this request would be burdensome, plaintiff's motion is granted and defendant shall fully respond to RFP no. 17.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel (Dckt. #35) is granted in part and denied in part. Defendant shall produce all information and documents ordered above by June 11, 2021.

**ENTERED:**

Date: 5/28/21

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**